SEARS NAVIGATION CO., Inc. v. THE
COYNE SISTERS et al.

THE ROME SEARS.

No. 18024.

United States District Court
E. D. New York.

March 20, 1952.

512

Macklin, Speer, Hanan & McKernan, New York City, Proctors for Libellant, by Leo F. Hanan, New York City, James N. Allan, New York City, of counsel.

Mahar & Mason, New York City, Proctors for claimant, by Frank C. Mason, New York City, of counsel.

INCH, Chief Judge.

Libellant, owner of the barge Rome Sears, brings this action against the tug Coyne Sisters to recover damages sustained by the barge when it was grounded on October 28, 1945, in the New York State Barge Canal while in tow of the tug.

The tug admits the barge was grounded while in tow, but contends the grounding occurred on an uncharted bar of stones and gravel in the canal channel. Libellant, on the other hand, contends that the tug negligently navigated the barge into shallow water outside the canal channel limits.

On October 28, 1945 the tug and barge were made up in push fashion with cables holding the bow of the tug securely against the stern of the barge. The barge was 196.1 feet long, 40.1 feet wide and had a draft of about 11 feet. The tug was 81.5 feet long and was drawing about 9 feet 6 inches. The weather was clear, and the tow was proceeding westerly through the canal enroute to Utica.

At about 9 P.M., between locks 8 and 9, the barge was run aground at an angle to the north bank of the canal. At the time of the accident there was no lookout stationed at the bow of the barge. The place of the grounding was estimated to be at a point approximately 400 to 600 feet below, or east of the B & M Railroad Bridge, and 30 to 40 feet off the north bank of the canal. This part of the canal runs through the Mohawk River, and proceeding from east to west, the canal turns to the right at about 1,000 feet below or east of the railroad bridge. It then runs in a fairly straight line up to the bridge where it takes a turn back to the left. In the vicinity of the grounding the canal is approximately 400 feet wide, and from the charts and other evidence presented it appears that the channel is roughly in the center of the canal. At a point 400 feet below or east of the bridge the canal channel is 200 feet wide, and from that point to the bend in the canal below the bridge the channel is no greater than 230 feet wide.

As a result of the grounding the bow of the barge on the starboard side was raised about one and a half feet out of the water, and it took the tug approximately one hour to free the barge from the grounding.

On receipt of a report of the grounding, an Assistant Civil Engineer of the New York State Department of Public Works,

Division of Canals and Waterways, made a sweeping of the canal channel on October 30, 1945. The channel was swept, at a depth of 13.5 feet, from the railroad bridge to a point 700 or 800 feet below or east of the bridge, and no obstruction was found in the channel. (Libellant's Ex. 9)

Claimant agrees that the grounding of the barge, while in tow of the tug, created a presumption of fault on the part of the tug which it has the burden of explaining. On the proof presented, however, I cannot find that a credible explanation has been made. Although the tug claimed that the barge grounded on a bar of stones and gravel, an engineer employed by the State agency in charge of the canal made a careful sweeping of the area within less than 48 hours after the grounding and no obstacle was found in the canal channel. This proof alone is sufficient to dispose of claimant's explanation of the grounding, so that the presumption of negligence on the part of the tug remains.

However, it is not necessary to predicate a finding of liability on a presumption of negligence, since libellant has presented sufficient proof to establish affirmative negligence on the part of the tug. At the point of grounding the canal was approximately 400 feet wide and the canal channel was no greater than 230 feet wide. If the channel were exactly in the center of the canal there would be approximately 85 feet of shallow water between the edge of the channel and the bank of the canal. The tug's witnesses testified that the grounding occurred approximately 40 feet off the north bank of the canal, and the captain of the barge estimated the distance to be only 30 feet off the bank. Therefore, taking into consideration the place of the grounding, the width of the channel and the width of the canal, and the location of the channel in the canal, and also the fact that the channel in this area was free of any obstacle, it must be concluded that the grounding occurred in shallow water outside the channel.

From the physical facts it is clear that the tug was navigating too close to the north bank of the canal. There was no apparent necessity for navigating the tow within 30 or 40 feet of the north bank in this area where the canal was approximately 400 feet wide with a channel no greater than 230 feet wide, particularly when there were no other vessels in the vicinity, and there were adequate lights on the piers of the bridge up ahead on which the tug pilot could have safely shaped his tow.

Moreover, it is admitted that the tug was proceeding on a dark night without a lookout being posted at the bow of the barge. The barge was 196.1 feet long and the pilot aboard the tug must have been more than 200 feet back from the bow of barge, and consequently not in a proper position to steer the barge safely through this winding section of the canal at night. It is reasonable to believe that had there been a lookout on the barge he might have signalled to the tug pilot and thus prevented the barge from going aground in the shallow water near the canal bank.

Accordingly, libellant is entitled to an interlocutory decree against the tug Coyne Sisters for damages caused to the barge Rome Sears, with costs.

Findings of fact and conclusions of law are being filed herewith. Settle decree.

### Findings of Fact

1. On October 28, 1945 libellant, Sears Navigation Co., Inc., was a New York corporation and the owner of the barge Rome Sears.

2. On October 28, 1945 claimant, Oswego River Towing Line, Inc., was a New York corporation and the owner of the tug Coyne Sisters.

3. The barge Rome Sears was a non-self-propelled tank barge of steel construction, 196.1 feet in length, 40.1 feet of beam and 12.8 feet depth of hold.

4. The tug Coyne Sisters was 81.5 feet in length, 20.9 feet of beam, 9.6 feet depth of hold with an indicated horsepower of 420.

5. During the evening of October 28, 1945 the tug Coyne Sisters had the barge Rome Sears in tow in the New York State Barge Canal, the tow proceeding in a westerly direction enroute to Utica, New York.

6. The tug and barge were made up in push boat fashion with cables holding the

bow of the tug securely against the stern of the barge.

7. At about 9 P.M., between locks 8 and 9, the barge was run aground at an angle to the north bank of the canal.

8. At the time of the grounding the weather was clear, and the night was dark.

9. Shortly before and at the time of the grounding there was no lookout stationed at the bow of the barge.

10. The place of grounding was approximately 400 to 600 feet below or east of the B & M Railroad Bridge, and 30 to 40 feet off the north bank of the canal.

11. In the vicinity of the grounding the canal runs through the Mohawk River, and proceeding from east to west, the canal turns to the right at about 1,000 feet below or east of the B & M Railroad Bridge; it then runs in a fairly straight line up to the bridge where it takes a turn back to the left.

12. There are red and white signal lights on the piers of the B & M Railroad Bridge which are used as an aid to navigation in that part of the canal.

13. In the vicinity of the grounding the canal is approximately 400 feet wide, and the channel is approximately in the center of the canal.

14. At a point 400 feet below or east of the B & M Railroad Bridge the canal channel is 200 feet wide and from that point to the bend in the canal 1,000 feet below the bridge the channel is no greater than 230 feet wide.

15. As a result of the grounding the bow of the barge on the starboard side was raised about one and one-half feet out of the water, and it took the tug approximately one hour to free the barge from the grounding.

16. As a result of the grounding the barge sustained damage.

17. On receipt of a report of the grounding, an Assistant Civil Engineer of the New York State Department of Public Works, Division of Canals and Waterways, made a sweeping of the canal channel on October 30, 1945. The channel was swept, at a depth of 13.5 feet, from the B & M Railroad Bridge to a point 700 or 800 feet below or east of the bridge, and no obstruction was found in the canal channel.

18. The tug navigated the barge into shallow water outside the canal channel where it was caused to ground.

19. The barge was not grounded on a bar of stones and gravel or on any other obstruction in the canal channel.

### Conclusions of Law

I. The tug was negligent in navigating the barge outside the canal channel limits into shallow water where it was caused to ground.

II. The tug was negligent in failing to have a lookout posted on the bow of the barge.

III. Libellant is entitled to an interlocutory decree for damages sustained to its barge Rome Sears as a result of the grounding on October 28, 1945, with costs.